## Kane *v.* Scranton Transit Company, Appellant.

Argued January 6, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Vivian P. Edwards, Jr.,* with her *Eugene Nogi* and *Nogi, O'Malley & Harris,* for appellant.

*John W. Bour,* with him *Carlon M. O'Malley,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, February 13, 1953:

The Scranton Transit Company, defendant, appeals from judgments in favor of Mr. and Mrs. Thomas Kane for damages sustained when Mrs. Kane was struck by a bus owned and operated by defendant company. A jury returned a verdict of $20,000.00 for the wife and $10,000.00 for the husband, but the latter filed a remittitur of $3,000.00 at the suggestion of the trial judge. The court in banc overruled defendant's motions for judgment n.o.v. and for new trial. These appeals followed.

The accident occurred near the intersection of Lackawanna and Wyoming Avenues in the city of Scranton. Wife-plaintiff had been shopping in a food store on Wyoming Avenue. She proceeded south along Wyoming Avenue to the northwest corner of the intersection. She was crossing from the north to the south side of Lackawanna Avenue when struck by defendant's bus, which had just turned into Lackawanna Avenue from Wyoming Avenue.

The exact point at which Mrs. Kane crossed Lackawanna Avenue is the chief factual issue in the case. Appellant argues that "Both the preponderance of the

testimony and the incontrovertible physical facts clearly establish that the accident occurred below and west of the street intersection." A review of the record reveals wide disagreement among the many witnesses in their descriptions of the point at which the accident did occur. It is true that several of them placed the point of impact at a considerable distance from the pedestrian crosswalk; some of the testimony offered by defendant would indicate that Mrs. Kane was fifty-four feet from the crosswalk when she was struck. On the other hand, the plaintiff herself testified positively that she crossed directly at the intersection. The pictures introduced into evidence show a light pole just at the Wyoming Avenue building line. Plaintiff testified that she purchased a newspaper at the stand adjacent to this pole, and that she started across Lackawanna Avenue from the easterly (or Wyoming Avenue) side of the pole. She was corroborated by a disinterested eye-witness, Patrick J. Dixon, who pointed to a spot well within the crosswalk as the place of impact. The lieutenant from the fire department who rendered first aid testified that he found the plaintiff lying in the street about nine or ten feet from the crosswalk. It was clearly the province of the jury to weigh all this conflicting evidence and reach a conclusion on the disputed question of fact: *Decker v. Kulesza,* 369 Pa. 259, 264, 85 A. 2d 413.

The incontrovertible physical facts doctrine has no application to the facts of this case. Defendant bases this argument on the location of skid marks on Lackawanna Avenue shown by a photograph taken almost immediately after the accident occurred. There are many reasons why such evidence cannot be regarded as proof of an incontrovertible physical fact: (1) identification of the picture as skid marks depended entirely upon the opinion testimony of a photographer;

(2) this photographer, not being an eye-witness to the accident, was obviously unable to say positively that the marks pictured were made by defendant's bus as it struck plaintiff; (3) there was only oral testimony, the credibility of which is for the jury, to establish the distance which the bus traveled after it struck the plaintiff before the brakes took hold to cause skidding; (4) no attempt was made to establish whether front or rear wheels of the bus made the mark. In the light of these and other uncertainties in the testimony, it is impossible to say that the photograph establishes beyond controversy the precise location of the accident.

Another factor of importance in the testimony is the unanimous agreement of all witnesses that the front wheels of the bus were still turned to the right after the accident. It is thus possible to infer that the bus had not yet completed its right turn from Wyoming Avenue into Lackawanna Avenue and therefore must still have been at or very near the intersection when it struck the wife-plaintiff. Under such circumstances, the statement of Mr. Justice JONES in *Atkinson v. Coskey*, 354 Pa. 297, 302, 47 A. 2d 156, is pertinent: "In any event, it is the presence of an intersection rather than the precise position of some one within it that determines the care required of approaching drivers in the circumstances: cf. Willinsky v. Fulton, 79 Pa. Superior Ct. 144, 147." The high duty of care resting on a motorist at an intersection has frequently been referred to in our decisions. See: *Lane v. Samuels*, 350 Pa. 446, 39 A. 2d 626; *Martino v. Adourian*, 360 Pa. 580, 63 A. 2d 12.

Defendant also contends that the trial judge should have charged the jury "That if this accident happened at any other point than at the intersection, their verdict must be in favor of the defendant." It was correct for the learned court below to refuse so to charge.

There was ample testimony to sustain a finding by the jury that Mrs. Kane was fully committed to the crossing before the bus came upon her. The court properly charged, in part, as follows: ". . . and in order to hold the driver of an automobile negligent for coming into collision with somebody in the middle of the block or to hold that this bus driver was negligent for coming in contact with the wife plaintiff in the middle of the block, the person who has been injured and hit by the motor vehicle must have been on the highway long enough to be seen by a careful driver in time to avoid hitting her. In other words, members of the jury, the bus driver going down the roadway in between intersections has the right-of-way." See: *McAvoy v. Kromer*, 277 Pa. 196, 199, 120 A. 762; *Moore v. Esso Standard Oil Company of Pennsylvania*, 364 Pa. 343, 346, 72 A. 2d 117.

Defendant's argument that there was no evidence of negligence on the part of the bus driver is without merit. There was testimony that plaintiff crossed with the traffic light in her favor, that she looked and did not see the bus at the time she started across, and that the bus was so crowded that the driver's view out the right front side of the bus was obscured.

Defendant's final argument relates to alleged excessiveness of the verdicts. The severity of the wife-plaintiff's injury is undenied. The learned court below described it as follows: "The wife plaintiff was unquestionably painfully and permanently injured. The heel of her foot was mashed and crushed. The skin from a point beginning about the middle of the foot and extending about two and one-half to three inches up the back of the leg was completely torn off. She was hospitalized for a period of nine weeks. Two operations on the foot were necessary. Approximately twenty square inches of skin was necessarily grafted

from her left thigh on to her foot surface. Nurses were in attendance during her complete hospital stay. From the day she left the hospital until Christmas Day of the same year, she was bed ridden at home. She was at the time of trial (May 28, 1951) still under the Doctor's care. Subsequent medical care is indicated. By reason of the injury adhesions formed in the ankle joint. She developed traumatic arthritis. The ankle became partly fixed and the Achilles tendon became shortened. By reason of which, she suffered a dropped foot, that is she was and is unable to raise her toes and bring her foot to a position at right angles with her leg. To break the adhesions in the bones of the ankle and to stretch the tendon physical therapy by a specially trained person over a period of months was necessary. She necessarily used a cane and crutches until May 1951. Use of a special shoe was and is necessary for the remainder of her life. All of the flesh and muscle over the heel was destroyed and necessarily removed while the wife plaintiff was hospitalized and as a result she has no heel pad. In other words, there is nothing over the heel bone but a thin layer of skin. The serious condition is of a permanent nature. She has suffered excruciating pain and will continue to suffer pain so long as she lives. Her ability to perform the usual household services is considerably lessened. The hiring of substitute help has been and will be necessary. Up to the time of trial, the husband plaintiff incurred expenses as a result of the injury in an amount totaling $4,055.80."

It has often been held that an appellate court will disturb a jury's verdict, sustained by the court below in banc, only where it is "so grossly excessive as to shock our sense of justice and to indicate a clear abuse of discretion on the part of the court below": *Mashinsky v. Philadelphia*, 333 Pa. 97, 106, 3 A. 2d 790. See

also: *Giannone v. Reale,* 333 Pa. 21, 3 A. 2d 331; *Rebel v. Standard Sanitary Manufacturing Company,* 340 Pa. 313, 16 A. 2d 534; *Knickerbocker v. Scranton,* 344 Pa. 317, 25 A. 2d 152.

In view of the permanency and painfulness of the injury, we are unable to say that the amounts awarded to the plaintiffs shock our sense of justice.

Judgments affirmed.