547 A.2d 382

**Kathryn GUIDRY, Executrix of the Estate of Gilbert Guidry, Deceased, and Kathryn Guidry, Widow in her own Right, Appellee,**

v.

**JOHNS–MANVILLE CORPORATION, Johns–Manville Sale Corporation, Raybestos Manhattan, Inc., Forty–Eight Insulation, Inc., Pittsburgh Corning Corporation, GAF Corporation, Armstrong Cork, Company, Unarco Industries, Inc., H.K. Porter Company, Inc., Southern Asbestos Company, Eagle–Picher Industries, Inc., Keene Corporation, Turner Newall, Ltd., Keasbey Mattison Company, Certain–Teed Products Corporation, U.S. Rubber Co., Inc., Pacor, Inc., Celotex Corporation, Philip Carey Manufacturing Co., Amatex Corporation, Owens–Corning Fiberglas Co., Inc., Asbestos Textile Institute, Inc., Uniroyal, Inc., Carolina Asbestos Company, Asbestos Textile Company, Thermoid Company, Asten Hill Manufacturing Co., Ruberoid Company, Inc., Garlock, Inc.—Precision Seal Division.**

**Appeal of GAF CORPORATION.**

Superior Court of Pennsylvania.

Argued March 2, 1988.

Filed Sept. 1, 1988.

Stuart J. Agins, Philadelphia, for appellant.

Howell K. Rosenberg, Philadelphia, for Guidry, appellee.

Before BROSKY, BECK and CERCONE, JJ.

BECK, Judge:

This is an appeal from an order of the Court of Common Pleas for Philadelphia County granting plaintiffs' Motion for New Trial as to damages only.

This action was commenced in 1979. Plaintiffs were Gilbert Guidry and his wife, Kathryn. For a number of years Mr. Guidry had been employed at job sites, including the Philadelphia Naval Shipyard, where he had been exposed to asbestos. He also had a long history of smoking. At the time of suit, Mr. Guidry had not been diagnosed as suffering from lung cancer. However, in 1980, this diagnosis was made and six months later, Mr. Guidry died. He was then 50 years old. Mrs. Guidry was substituted as a plaintiff, suing as executrix of her husband's estate. The complaint alleged negligence and strict liability. It named thirty-seven defendants, all allegedly responsible for Mr. Guidry's asbestos-related injuries. Of these thirty-seven, thirty had settled prior to trial. Six others were dismissed from the suit for various reasons not relevant here.

Thus, at the time of trial, only appellant GAF remained as a non-settled defendant. The trial court ordered the trial of GAF's cross-claims against the settled defendants severed from the trial of plaintiffs' action against GAF. A jury trial resulted in a verdict for plaintiffs and an award of $185,000 to Mrs. Guidry as executrix and $10,000 in her own right.

Plaintiff filed a Motion for New Trial as to Damages Only, alleging that the damages award was inadequate. GAF filed Cross Post Trial Motions consisting of a Motion to Mould the Verdict, Motion for Judgment N.O.V., and Motion for New Trial on Liability. In the Motion to Mould the Verdict, GAF asserted that since plaintiff admittedly had already received settlement payments from the settled defendants in an amount exceeding the amount of the verdict, GAF had no liability to plaintiff and the verdict should be molded and marked satisfied to indicate this fact. In the Motions for Judgment N.O.V. and New Trial as to Liability, GAF alleged a variety of trial errors, including errors in the court's charge and evidentiary rulings.

In the preface to these motions, GAF described its position as follows:

Defendant GAF Corporation requests that the Court dismiss and deny any and all requests made in the Plaintiff's Post Trial Motions. In addition to disputing plaintiff's assignments of error, defendant asserts that the issues of liability and damages are so interwoven that a new trial as to damages only would constitute a complete denial of justice. Further, Defendant GAF moves that the Court consider Defendant GAF's Cross Post Trial Motions re: Motion to Mould the Verdict to reflect settlements reached with joint tortfeasors. In the event the Court denies Plaintiff's Post Trial Motions, Defendant's Motions for Judgment N.O.V. and New Trial should be disregarded and only GAF's Motion to Mould the Verdict should be considered. However, without waiver of this position, and only if the Court intends to grant Plaintiff a new trial as to damages, GAF Corporation moves that the Court consider Defendant GAF Corporation's Cross Post Trial Motions re: Judgment N.O.V. and New Trial as to Liability.

In the prayer for relief at the end of GAF's Cross Post Trial Motions, this position was reiterated, as follows:

... [GAF requests] that the Court dismiss and deny Plaintiff's Post Trial Motions. Further, it is requested that the Court grant the appropriate Cross Post Trial Motion of Defendant GAF Corporation re: Motion to Mould the Verdict. In the alternative and only in the event that the Court grants Plaintiff's Post Trial Motions, then it is respectfully requested that the Court grant the appropriate Cross Post Trial Motions of Defendant GAF Corporation re: Judgment N.O.V. and New Trial as to Liability.

Thus, GAF's post-trial position was clearly that its motions for judgment n.o.v. and new trial, based on allegations of error in the trial court's handling of the liability aspect of the trial, were to be considered only if the trial court granted plaintiff's motion for a new trial as to damages. If

the trial court denied plaintiff's motion, then GAF wanted the court to consider only GAF's Motion to Mould the Verdict.[1]

In an Order dated January 7, 1986, the trial court granted plaintiffs' Motion for a New Trial as to damages only. No trial court opinion in support of this order was authored. The court did not specifically refer to either GAF's Motion to Mould the Verdict or to GAF's Cross Post Trial Motions for Judgment N.O.V. or New Trial. However, since the court granted a new trial as to damages only, we can assume that the court impliedly also denied GAF's Cross Post Trial Motions for Judgment N.O.V. and New Trial as to liability. No action appears to have been taken regarding the Motion to Mould the Verdict, presumably because this motion could not be acted upon until the conclusion of the new trial when damages were finally determined. GAF filed this timely appeal.

On appeal, GAF takes a position materially different from that it took in its post-trial filings. Before us, GAF not only argues that the trial court erred in granting plaintiff a new trial as to damages only but also argues that even if we reverse this decision, GAF is nevertheless entitled to a new trial as to liability. In other words, GAF now argues that even if we determine that the damages award should stand, a new trial as to liability alone is warranted.

■ As we will more fully discuss below, we agree with GAF that the trial court erred in granting a new trial as to damages. Given this determination, we will reverse the trial court's order. However, we will not consider GAF's remaining arguments in support of a new trial as to liability. As we have repeatedly stated, an appellant cannot assert one theory of error at trial and a different one on appeal. *See Commonwealth v. Gordon*, 364 Pa.Super. 521, 534–535,

---

1. We also note that GAF's briefs in support of its post-trial motions contained full argument in support of GAF's opposition to a new trial on damages and as to its Motion to Mould the Verdict, but did not present full argument as to GAF's allegations of error as to liability. As to these allegations, the brief contains merely a numbered list of the allegations, each supported by a single citation.

528 A.2d 631, 638–9 (1987), and cases cited therein. At trial, GAF clearly indicated that its request for judgment n.o.v. or new trial as to liability was completely contingent upon a grant of a new trial as to damages. On the other hand, if damages were to be fixed in the amount of the jury's original verdict, i.e., $195,000, then GAF did *not* wish to allege any errors as to liability.

Since we have determined that in fact no new trial as to damages is warranted, we will hold GAF to its post-trial position and not consider its arguments in support of a new trial on liability. However, we will also remand to the trial court with an instruction that it consider GAF's Motion to Mould the Verdict in light of our decision.

Turning now to a discussion of GAF's challenge to the trial court's grant of a new trial as to damages only, we begin by recognizing that the grant of a new trial is within the discretion of the trial court and will be reversed only where there has been a gross abuse of that discretion. *Wilson v. Nelson,* 437 Pa. 254, 258 A.2d 657 (1969). *See also Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988). Nevertheless, appellate courts do not abdicate their power of review and will reverse where a clear abuse of discretion has occurred. *Bortner v. Gladfelter,* 302 Pa.Super. 492, 448 A.2d 1386 (1982).

The standard that guides the trial court's exercise of discretion is clear. As stated in *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 265 A.2d 516 (1970):

A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: [citation omitted]. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence was conflicting and the jury might have found for either party.

*Id.,* 438 Pa. at 289, 265 A.2d at 518 (quoting *Carroll v. Pittsburgh,* 368 Pa. 436, 445–6, 84 A.2d 505 (1951).

More specifically, the grant of new trial as to damages on the ground that the verdict is inadequate is appro-

priate only where "[t]he injustice of the verdict ... stand[s] forth like a beacon." *Elza v. Chovan*, 396 Pa. 112, 118, 152 A.2d 238 (1959). The verdict must bear no reasonable resemblance to the damages proved. *Id.* Thus, the verdict must appear to have resulted from

> passion, prejudice, partiality or corruption, or that the jury disregarded the instructions of the court, or, in some instances where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or according to some, where, otherwise, there has been an evident failure of justice to the plaintiff ...

*Morris v. Peckyno*, 202 Pa.Super. 490, 492, 198 A.2d 396 (1964) (quoting 15 Am.Jur. § 231).

■ The fact that a verdict is low, standing alone, does not indicate that the verdict is inadequate. *Id.* If the low verdict can be explained by viewing it as a compromise verdict, then it should not be disturbed on appeal. *Id.* Where the evidence is conflicting and the resulting verdict is low, the verdict may be regarded as a compromise verdict, i.e., "one where the jury, in doubt as to defendant's negligence or plaintiff's freedom from contributory negligence, brings in a verdict for the plaintiff but in a smaller amount than it would have if these questions had been free from doubt." *Stokan v. Turnbull*, 480 Pa. 71, 78, 389 A.2d 90 (1978) (citations omitted) (quoting *Phelps v. Paul L. Britton, Inc.*, 412 Pa. 55, 60 n. 3, 192 A.2d 689, 692 n. 3 (1963). Such verdicts are not only "allowed" but are "expected" and the compromise can arise either "out of damages or negligence or the balance of evidence concerning either or both, and the grant of a new trial may be an injustice to the defendant rather than an act of justice to plaintiff." *Elza*, 396 Pa. at 115, 152 A.2d at 240. *See also Fierman v. SEPTA*, 277 Pa.Super. 252, 419 A.2d 757 (1980).

In a very recent pronouncement by our Supreme Court, these principles were reaffirmed. In *Boggavarapu v. Pon-*

*ist,* 518 Pa. 162, 542 A.2d 516 (1988), plaintiff was bitten by a dog and subsequently received tetanus shots as part of his treatment for the dog bite. He sued the owners of the dog, who joined as defendants the treating physician and hospital. The damages requested included medical expenses of $9,000 and damages for pain and suffering. The jury returned a verdict for plaintiff and against the owners only in the amount of $42.60, the cost of emergency room treatment. The other defendants were exonerated. The trial court ordered a new trial because no damages for pain and suffering were awarded. *Id.,* 518 Pa. at 166–167, 542 A.2d 516.

The Supreme Court reversed, noting that plaintiff's evidence of pain all related to pain allegedly resulting from the administration of the tetanus shots. The Court concluded from the verdict that the jury must have disbelieved plaintiff's evidence in this regard, choosing rather to believe defendant's medical testimony that the shots could not have caused the alleged pain. This it was the jury's prerogative to do. Since the jury had disbelieved plaintiff's evidence as to the cause of the pain, they were free to refuse to award pain and suffering damages. *Id.,* 518 Pa. at 167–168, 542 A.2d 516.

■ In the instant case, GAF contends that there is an equally supportable explanation for the facially low verdict. Here, GAF argues, the immediate cause of decedent's death was lung cancer. There was medical expert testimony that decedent suffered from pleural asbestosis, resulting from exposure to asbestos, and from lung cancer. The expert testimony was conflicting as to whether the lung cancer resulted from decedent's exposure to asbestos or smoking or both. In fact, plaintiffs' medical expert testified that both asbestos exposure and smoking contribute to the development of lung cancer and that their precise interaction is not yet fully understood.[2]

**2.** In *Martin v. Owens–Corning Fiberglas Corp.,* 515 Pa. 377, 528 A.2d 947 (1987), the Supreme Court was similarly confronted with an asbestos case brought by a smoker plaintiff. The trial judge had

Moreover, there was evidence of the fact that decedent suffered from both diabetes and hypertension and that both of these conditions may decrease an individual's life expectancy. In fact, decedent's mother was a diabetic and died at age 52 and his father died of heart disease at age 58.

Thus, although the plaintiffs' damages witness set decedent's loss of future earning capacity at between $367,106 and $643,068, based on U.S. Government life expectancy tables and a variety of assumptions regarding decedent's projected working life and compensation, the jury's award of a total of $195,000 can be explained as resulting from the jury's attempt to reach a compromise based on conflicting evidence as to the cause of decedent's pain and death. "It was the province of the jury below to resolve inconsistencies and contradictions, to disbelieve all or part of the testimony of the witnesses, and to thereafter compromise the verdict or establish an amount which it determined would justly compensate the plaintiff for his loss." *Fierman*, 277 Pa.Super. at 255, 419 A.2d at 759.

The order of the trial court granting a new trial as to damages only is reversed and the jury's verdict is reinstated. The matter is remanded for further proceedings not inconsistent with this Opinion. Jurisdiction is relinquished.

specifically instructed the jury to apportion damages between the plaintiff's conduct and the defendant's. The Supreme Court disapproved this instruction because it found that the expert medical testimony in the case regarding the relative roles of smoking and asbestos exposure in causing plaintiff's disease was too indefinite to permit apportionment. The Court remanded the case for a new trial as to damages, finding that the apportionment instruction had resulted in an inadequate verdict.

The lead opinion in *Martin* was joined by two other justices. Justices Nix, Zappala and Hutchinson dissented. Justice McDermott separately concurred, clarifying that the majority opinion should *not* be construed as excluding consideration by the jury of the plaintiff's conduct in an asbestos case and indicating that on remand, the jury could return an even lower verdict if the evidence so warranted. The dissenters felt that the jury verdict, although low, should stand, having resulted from the jury's consideration of all of the evidence before it.