600 A.2d 558

William GROSS and Rosemarie Gross, H/W

v.

JOHNS–MANVILLE CORP., Pacor, Inc., Eagle Picher Industries, Unarco Industries, Inc., Keene Corporation, Raybestos–Manhattan, Inc., Celotex Corporation, Southern Textile Company, J.P. Stevens Company, Garlock, Inc., Owens–Illinois Glass Company, Fibreboard Corporation, GAF Corporation, Owens–Corning Fiberglas Corporation, Amatex Corporation, Pittsburgh Corning Corporation, Nicolet Industries, Inc., H.K. Porter Company, Forty–Eight Insulation, Inc. and Armstrong World Industries.

Appeal of KEENE CORPORATION.

William GROSS and Rosemarie Gross, H/W

v.

FIBREBOARD CORPORATION, Garlock, Inc., Pittsburgh Corning Corporation, Johns–Manville Corp., Pacor, Inc., Eagle Picher Industries, Unarco Industries, Inc., Keene Corporation, Raybestos–Manhattan, Inc., Celotex Corporation, Southern Textile Company, J.P. Stevens Company, Owens–Illinois Glass Company, GAF Corporation, Owens–Corning Fiberglas Corporation, Amatex Corporation, Nicolet Industries, Inc., H.K. Porter Company, Forty–Eight Insulation, Inc. and Armstrong World Industries. (Two Cases)

Appeal of FIBREBOARD CORPORATION and Pittsburgh Corning Corporation. (Two Cases).

William GROSS and Rosemarie Gross, H/W, Appellants

v.

JOHNS–MANVILLE CORP., Pacor, Inc., Eagle Picher Industries, Unarco Industries, Inc., Keene Corporation, Raybestos–Manhattan, Inc., Celotex Corporation, Southern Textile Company, J.P. Stevens Company, Garlock, Inc., Owens–Illinois Glass Company, Fibreboard Corporation, GAF Corporation, Owens–Corning Fiberglas Corporation, Amatex Corporation, Pittsburgh Corning Corporation, Nicolet Industries, Inc., H.K. Porter Company, Forty–Eight Insulation, Inc. and Armstrong World Industries, Appellees.

Superior Court of Pennsylvania.

Argued July 16, 1991.

Filed Dec. 11, 1991.

Carol L. Widemon, Philadelphia, for Keene Corp., appellant (at 367) and appellee (at 368, 369 & 370).

Kristine F. Collins, Philadelphia, for Gross, appellants (at 370) and appellees (at 367, 368 & 369).

George E. McDavid, Philadelphia, for Fibreboard Corp. and Pittsburgh Corning, appellants at (368 & 369) and appellees (at 367 & 370).

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

POPOVICH, Judge:

Before this Court are consolidated appeals from two orders entered in the Court of Common Pleas of Philadelphia County. This is a case involving personal injuries as a result of exposure to asbestos at the Philadelphia Naval

Shipyard. Appeals have been filed by the plaintiffs, (the Grosses), as well as several of the defendants, (Keene Corporation, Pittsburgh Corning Corporation and Fibreboard Corporation). The Grosses appeal the trial court's orders of November 5, 1990, and December 7, 1990, in which their motion for a new trial and additur was denied, and their petition for delay damages was denied as being untimely with regard to those defendants who stipulated to liability following the damages phase of the trial.[1] The latter is an issue of first impression. Keene Corporation appeals the trial court's order of November 5, 1990, in which its motion for a new trial on the issue of damages or, in the alternative, remittitur was denied. Pittsburgh Corning Corporation and Fibreboard Corporation appeal the trial court's December 7, 1990, order which granted to the Grosses delay damages as to them and the November 5, 1990, order which denied their motion for a new trial based upon various errors allegedly committed by the trial court. We affirm in part and reverse and remand in part.

William Gross was a marine machinist employed by the Philadelphia Naval Shipyard from 1962 to 1983. It was during this time that he was exposed to asbestos. Mr. Gross testified during trial that he first began to experience shortness of breath in 1975. (N.T. February 6, 1990 p. 84). There was expert testimony that Mr. Gross had developed pleural plaques, pleural thickening and asbestosis as a result of his exposure to asbestos and that this played a role in his shortness of breath. (N.T. February 6, 1990, pp. 168–184). There was also expert testimony that his shortness of breath was due to obesity and hypertension and that the pleural thickening was of a minimal degree and there-

---

1. All but two of the defendants in this action stipulated to a ten percent share of liability following a jury verdict on damages in a reverse bifurcated proceeding in which the damages phase was tried before the liability phase. The question to be addressed is whether the time for filing a petition for delay damages begins to run immediately following the stipulations to liability as to those stipulating defendants, or at the conclusion of the liability phase of the case which involved only two non-stipulating defendants. An elaboration of the circumstances described are discussed later in this opinion.

fore unlikely to be the cause of his respiratory symptoms. (N.T. February 7, 1990, pp. 85–88).

The proceeding took the form of a *reverse bifurcated trial* in which the issue of damages was tried first to be followed by a trial on the issue of liability. On February 8, 1990, the jury returned a verdict of $170,000.00 for William Gross and $50,000.00 for Rosemarie Gross on her loss of consortium claim. On February 9, 1990, following the damages phase of the case, several defendants stipulated to a 10% share of liability, reserving their rights to file post-trial motions and to appeal the damages verdict. The remaining defendants, Pittsburgh Corning Corp. and Fibreboard Corp., went on to the liability phase, and on February 15, 1990, the jury found all named defendants liable with the exception of H.K. Porter and Celotex Corp. who did not appear on the verdict sheet.[2]

Post-trial motions were filed by the Grosses requesting an increase in the award and by the defendants requesting a new trial or, alternatively, for a reduction in the award. These motions were denied by the trial court in its opinion and order of November 5, 1990. On February 22, 1990, the Grosses filed a petition for delay damages. In its order and opinion of December 7, 1990, the trial court granted the Gross's petition as to the two defendants who went on to the liability phase; Pittsburgh–Corning and Fibreboard, and denied their petition as to the stipulating defendants as being untimely.

The trial court concluded that the Pa.R.Civ.P. 238 requirement that a petition for delay damages be filed within ten days began to run on February 9, 1990, for the stipulating defendants and on February 15, 1990, for those defendants who went on to the liability phase of the case. The petition for delay damages was therefore filed thirteen days after

**2.** After proceeding to the liability phase, Garlock, Inc. settled on February 13, 1990, and is not a party to this appeal. The automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 *et seq.,* are currently in effect with regard to Celotex, Eagle–Picher and H.K. Porter.

the stipulations to liability and not within the ten days required by the Rule.

Pa.R.Civ.P. 238 states in pertinent part:

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.

* * * * * *

(c) Not later than ten days after the verdict or notice of the decision, the plaintiff may file a written motion requesting damages for delay and setting forth the computation.

* * * * * *

■■■ It was the trial court's determination that a stipulation was, in effect, a "verdict or notice of decision" from which the time for filing begins to run. We disagree. The fact that this was a *reverse bifurcated trial* complicates what would, under ordinary circumstances, be an uncomplicated reading of the rule. It is clear that the case could not have ended at the conclusion of the first verdict, i.e. damages, since there had been no finding as to liability. Therefore the time within which to file for delay damages could not begin to run from the first verdict under any circumstances.

The trial court attempts to equate the stipulations to liability in conjunction with the damages verdict with a "notice of the decision". This, in our view, is an incorrect reading of the rule. Part (a) of the rule itself tells us what is meant by "notice of the decision", stating as follows: "... damages for delay shall be added to ... damages awarded ... in the verdict of a jury, *in the decision of the court in a nonjury trial* or in the award of arbitra-

tors...." Pa.R.Civ.P. 238(a)(1) (emphasis added). A stipulation is not a "decision" within the meaning of the rule. The term "decision" as set forth in the rule refers to the decision of the court in a nonjury trial which would be the equivalent of a verdict in a jury trial. The question then becomes whether the rule contemplated that a stipulation to liability in conjunction with a damages verdict, as occurred in this case, constitutes a verdict of a jury or decision of the court. We think not.

The plain meaning of the statute contemplates that delay damages not be requested until the verdict has been rendered. In most cases this would not be problematic. There would either be one verdict, encompassing both liability and damages or, in the case of a bifurcated trial, the first verdict would generally be the liability verdict (at which point the defendants may settle [3]), followed by the damages phase, making that the final verdict from which the time period to file for delay damages would run. A reverse bifurcated trial, while a useful tool in effecting settlement, creates the unique problem presented here.

The purpose of Rule 238 is to encourage early settlement of cases and to "unclutter the courts". *See Craig v. Magee Memorial Rehab. Center*, 400 Pa.Super. 126, 582 A.2d 1376, 1379 (1990) *citing Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981); *see also Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350, 1353 (1986). We do not consider a stipulation to liability a settlement offer. While we do not minimize the effort to do away with unnecessary litigation where liability is clear, we also consider that no settlement

**3.** We note that the trial court likened the stipulation of liability to a "quasi settlement". Where there is a settlement, however, the parties do not retain the right to file post trial motions or appeals. A settlement ends the case because both parties have agreed to some compromise of their interests. In the case at bar, the defendants have essentially agreed only that their product was present at the Shipyard, but there has been no offer of settlement which would end the litigation. In retaining post trial and appellate rights, the defendant companies have by no means made an offer of settlement.

exists as a result of the stipulations.[4] It is therefore a reasonable interpretation of the rule that the verdict for the liability phase triggers the time period within which to file a petition for delay damages.[5] As a practical matter, it would be a duplication of efforts for the plaintiffs to be required to file more than one petition in the same case and for the trial judge to have to entertain more than one petition.[6] For the above stated reasons, the ten day time period within which to file for delay damages begins to run following the liability verdict, absent a settlement.

The Grosses next appeal the trial court's denial of their motion for a new trial and for additur. They assert that a verdict of $170,000 is "shockingly low" where Mr. Gross's lost wages were allegedly more than $1,000,000. They rely on the testimony of expert witnesses during the trial which showed that Mr. Gross's shortness of breath

4. As long as there is no settlement, the defendant companies continue to earn interest on the funds retained.

5. We note, however, that nothing in the rule prevents the plaintiffs from filing a petition for delay damages following the stipulations but before the second verdict on the liability issue. We only address the issue of whether they are *required* to file their petition within ten days of the stipulation.

6. We are aware that the rule requires the calculation of delay damages to include the period of time up until the verdict. The rule states:
 (2) Damages for delay shall be awarded for the period of time
 (i) in an action commenced before August 1, 1989, from the date the plaintiff first filed a complaint or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision; or
 (ii) in an action commenced on or after August 1, 1989, from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.
 Pa.R.Civ.P. 238(a)(2)(i) & (ii). The only time to be excluded from the calculation of delay damages is the time:
 (b)(1) after which the defendant has made a written offer of
 (i) settlement in a specified sum with prompt cash payment to the plaintiff, or
 (ii) a structured settlement underwritten by a financially responsible entity, ... or
 (2) during which the plaintiff caused delay of the trial.
 There has been no settlement offer in this case. The defendant companies chose to try the case and without a settlement are liable for delay damages for the time period specified by the rule.

was related to his asbestos exposure and that his difficulties will become increasingly worse as time goes on, affecting his employability. In addition, the Grosses state that all of the experts agree that Mr. Gross has a significantly increased risk of developing cancer as a result of his asbestos exposure.

The trial court found that the jury's verdict was not "shocking" and refused to overturn it in the absence of evidence which showed "caprice, prejudice, partiality or corruption." (Trial court opinion, November 5, 1990, p. 4). We agree.

Our standard of review of an order denying a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.*, 513 Pa. 411, 424–27, 521 A.2d 413, 420–21 (1987). *See Solomon v. Baum*, 126 Pa.Commw. 646, 560 A.2d 878 (1989) *allocatur denied* 525 Pa. 636, 578 A.2d 930. The granting of a new trial on the ground that the verdict is inadequate is appropriate only where "[t]he injustice of the verdict ... stand[s] forth like a beacon." *Elza v. Chovan*, 396 Pa. 112, 118, 152 A.2d 238 (1959). Further, there must be no resemblance between the verdict and the damages proved. *Id.* Thus, the verdict must appear to have resulted from

> passion, prejudice, partiality or corruption, or that the jury disregarded the instructions of the court, or, in some instances where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or according to some, where, otherwise, there has been an evident failure of justice to the plaintiff ...

*Guidry v. Johns–Manville Corp.*, 377 Pa.Super. 308, 314, 547 A.2d 382, 385 (1988) quoting *Morris v. Peckyno*, 202 Pa.Super. 490, 492, 198 A.2d 396 (1964) (quoting 15 Am.Jur. § 231). We went on to state in *Guidry:*

The fact that a verdict is low, standing alone, does not indicate that the verdict is inadequate.... If the low verdict can be explained by viewing it as a compromise verdict, then it should not be disturbed on appeal.... Where the evidence is conflicting and the resulting verdict is low, the verdict may be regarded as a compromise verdict, i.e., "one where the jury, in doubt as to defendant's negligence or plaintiff's freedom from contributory negligence, brings in a verdict for the plaintiff but in a smaller amount than it would have if these questions had been free from doubt."

*Guidry*, 377 Pa.Superior Ct. at 314, 547 A.2d at 385 (citations omitted) quoting *Phelps v. Paul L. Britton, Inc.*, 412 Pa. 55, 60 n. 3, 192 A.2d 689, 692 n. 3 (1963).

While there is consistent testimony that Mr. Gross was clearly exposed to asbestos, a review of the record reveals that there was conflicting expert testimony as to the cause of the symptoms which he exhibited. Generally, there was testimony that Mr. Gross's shortness of breath and chest pain resulting in his inability to work to his same capacity, was due to his exposure to asbestos. There was, however, also testimony that Mr. Gross's symptoms were not a result of his asbestos exposure but were due to obesity and coronary irregularities and that he did not have asbestosis. "It was the province of the jury below to resolve inconsistencies and contradictions, to disbelieve all or part of the testimony of the witnesses, and to thereafter compromise the verdict or establish an amount which it determined would justly compensate the plaintiff for his loss." *Guidry*, 547 A.2d at 386, quoting *Fierman v. SEPTA*, 277 Pa.Super. 252, 419 A.2d 757 (1980). Although the Grosses set the amount of lost wages at $1,221,000 the jury's award of $170,000 can be considered a compromise verdict based upon the conflicting evidence.[7] We will not substitute our

---

7. The jury may also have considered evidence of Mr. Gross's failure to accept employment at a salary below that which his seniority entitled him to along with evidence of the establishment of his own business. We do not in any way pass upon the weight or importance to be given such evidence, but merely point out that there was varying evidence

judgment for that of the jury's absent any showing of passion, prejudice, partiality, corruption or mistake on the part of the jury.

■ We will next address Keene Corporation's motion for a new trial or remittitur. Keene contends that expert testimony regarding Mr. Gross's pulmonary function tests showed that he should have been able to perform most jobs and that his exposure to asbestos should not have prevented him from engaging in all but the most physically demanding jobs. Keene further asserts that Mr. Gross's termination from employment with the shipyard was due to his refusal to accept a lower salary for alternative positions, choosing instead to become self-employed at a significantly higher income. It is argued that the award was based largely upon Mr. Gross's fear of contracting cancer and risk of developing cancer, what Keene refers to as "subjective intangibles", and as such, should not be the basis for an award of this amount.

In reviewing a motion for a new trial on the ground that the verdict was excessive the standard for its grant or denial is within the discretion of the trial court and we will not interfere absent a clear abuse of discretion. *Robert v. Chodoff,* 259 Pa.Super. 332, 366, 393 A.2d 853, 871 (1978) *see also Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 574 A.2d 1084, 1098 (1990). A verdict is not considered excessive unless it is "so grossly excessive as to shock our sense of justice." *Robert,* 259 Pa.Superior Ct. at 366–367, 393 A.2d at 871 quoting *Kane v. Scranton Transit Co.,* 372 Pa. 496, 94 A.2d 560 (1953); [8] *see also Weed v. Kerr,* 416 Pa. 233, 205 A.2d 858 (1965).

which the jury may have chosen to consider in deciding the amount of damages.

8. In *Robert* we reviewed factors to be considered along with the particular circumstances of the case in determining whether a verdict is excessive: "(1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will affect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint."

As stated in our above discussion regarding inadequacy of the verdict, the record reveals conflicting testimony as to the nature and extent of Mr. Gross's injuries. There was testimony that his condition is due to his asbestos exposure and that he is experiencing tangible symptoms of such exposure which are of a permanent and regressive nature. There was also testimony that his asbestos exposure was not responsible for his current symptoms or his termination from employment. Evidence was presented that Mr. Gross planned to work at the shipyard until his retirement, that his lost wages exceeded $1,000,000 and that the United States Department of Labor declared him to be totally disabled. There was also testimony by Mrs. Gross as to the effect of Mr. Gross's symptoms on their marital relationship.

The jury had the difficult task of sorting through the evidence to come up with a damages verdict which fairly represented its view of the most credible evidence. There was sufficient evidence, if accepted by the jury, to support its award of compensatory damages in the amount of $170,-000 as well as damages for loss of consortium in the amount of $50,000. We do not find that the jury's verdict "shocks our sense of justice" or that it is excessive any more than we found it to have been inadequate. Keene Corporation is therefore not entitled to a new trial or remittitur.

Lastly, we will review Pittsburgh Corning Corporation's, (Pittsburgh), and Fibreboard Corporation's, (Fibreboard), appeal from the trial court's denial of their motion for a new trial and its award of delay damages. They raise the following issues in their motion for a new trial:

1. The court below committed an error of law in declining to charge the jury to determine the comparative liability of all defendants on the verdict sheet.

2. The lower court erred in holding that defendants' motion for apportionment of liability was premature.

*Robert*, 259 Pa.Superior Ct. at 367, 393 A.2d at 871, citing *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 361 A.2d 362 (1976).

3. The lower court erred in holding that the number of defects was relevant to the present matter.

4. The court below committed an error of law in holding that there was insufficient evidence to charge the jury on apportionment of damages among the defendants.

5. The court below erred in holding that defendants' evidence on the apportionment issue failed to meet the *Eckenrod* [*v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988)] test.

Fibreboard and Pittsburgh first argue that the trial court was required to charge the jury on the issue of comparative liability. This issue was argued to the trial court before the jury was charged and at that time the court concluded, among other things, that insufficient evidence was presented to the jury to enable it to make a determination as to the comparative fault of the defendant companies.[9] In its opinion of November 5, 1990, following post-trial motions, the trial court again stated that the jury did not receive sufficient evidence to permit it to apportion liability and that "allowing apportionment would have required jurors to engage in speculation and conjecture to truly percentagize liability." (Trial court opinion, November 5, 1990, p. 7).

We are presented with nothing which requires as a matter of law that a jury *must* be charged on the issue of comparative liability in every tort action involving more than one defendant.[10] Had evidence been presented upon

9. The trial court also stated that the present case was distinguishable from *Walton v. Avco,* 383 Pa.Super. 518, 557 A.2d 372 (1989), which required that a hearing be held to determine the comparative liability of the two defendants, each responsible for a separate defect causing the crash of a helicopter. It was the view of the trial court that *Walton* involved a post-liability holding for contribution among defendants already found liable and that liability had not yet been determined in the present case making defendant's motion premature. The trial court also noted that in *Walton* there were two separate defects involving only one product. These two issues will be addressed later in this opinion.

10. 42 Pa.C.S.A. § 7102(b) states:

which a jury could have apportioned the comparative fault of the defendant companies such an instruction would have been appropriate. *See Walton v. Avco Corp.,* 383 Pa.Super. 518, 557 A.2d 372 *allocatur granted,* 524 Pa. 594, 568 A.2d 1245 (1989); *Compare Martin v. Owens–Corning Fiberglas,* 515 Pa. 377, 528 A.2d 947 (1987) (Expert witnesses were unable to determine the relative contributions of cigarette smoking and asbestos exposure and without such expert guidance the court concluded that a jury cannot be expected to make such a determination.)

Fibreboard and Pittsburgh next argue that the trial court was in error in its conclusion that the holding in *Walton,* which permitted apportionment of liability amongst tort defendants in strict liability cases, was applicable only after a determination of liability and not during the time of such determination.[11] Because we have concluded that the trial court properly declined to charge the jury on the issue of comparative fault for lack of a factual basis upon which to base such a determination, we find it unnecessary to address whether the trial court's conclusion during trial that it was premature to submit the question of comparative liability to the jury was in error. We note only that the trial court, in its November 5, 1990, opinion, does not offer this as its reason for denying Fibreboard's and Pittsburgh's motion for a new trial. Whether the request for the instruction was premature is a moot point.

> **(b) Recovery against joint defendant; contribution.**—Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

We do not read this to mean that the issue of apportionment *must* be submitted to the factfinder regardless of the sufficiency of evidence which would support such a determination.

11. The trial court stated that the jury had not yet made a determination as to liability and it was therefore premature to require that it apportion liability amongst the defendant companies. (N.T. February 14, 1990, pp. 152–53).

Similarly, we find it unnecessary to address the third issue, (the relevancy of the number of defects in this action as compared to those in *Walton*), which again raises the trial court's discussion following its denial of Fibreboard's and Pittsburgh's requested instruction regarding comparative liability. It was sufficient to have based its refusal to instruct upon the lack of evidence available to the jury on the issue of comparative fault and that is the basis of the trial court's decision on that issue in its November 5, 1990, opinion. Any additional rationale of the trial court during the trial has become a moot point.

The fourth issue raised, sufficiency of evidence to support a jury instruction on apportionment, is closely related to the first issue, if not overlapping. We have determined that the trial court is not, as a matter of law, required to instruct the jury on the issue of comparative liability where it has been determined that insufficient evidence was presented upon which such a determination could be based. Fibreboard and Pittsburgh argue that sufficient evidence was in fact presented to the jury. More specifically, they state that evidence was presented that their presence at the shipyard was relatively small as compared to the other defendant companies, and, additionally, that their products, unlike the others, contained warnings of the dangers of inhaling asbestos fibers.[12]

12. The only testimony regarding the relative amounts of asbestos present at the shipyard was that of Mr. Watts:
Q. Say up until 1965 was Johns–Manville the supplier of the majority of the products down at the navy yard?
A. I would say it's one of the larger ones, but I couldn't say it was the main.... The court: Was [Raymark] there all the time or there a little bit?
The witness: Yes, it's there all the time, but it's used by other people. It's probably still there today in some form....
Q. Now we're back to Baldwin–Ehret–Hill, [Keene], I guess, where I began. How shall I characterize them?
A. Large....
Q. Eagle Picher?
A. That's cement. It shouldn't actually be in there. It's only cement.
Q. Was it cement used regularly by pipe coverers
A. Yes.

We have carefully reviewed the trial testimony and agree with the trial court's assessment that sufficient facts were not presented upon which a jury could apportion liability. Evidence of the amounts of asbestos present at the shipyard was presented in vague and uncertain terms. Evidence presented during trial of warnings which were placed only on the products of Fibreboard and Pittsburgh may be a defense as to liability, requiring that the jury determine the adequacy and efficacy of such warnings; however, it does not provide a basis upon which to apportion liability. *See Glomb v. Glomb*, 366 Pa.Super. 206, 530 A.2d 1362 (1987), *allocatur denied*, 517 Pa. 623, 538 A.2d 876 (1988) ("A court can direct the apportionment of liability among distinct causes only when the injured party suffers distinct harms or when the court is able to identify 'a reasonable basis for determining the contribution of each cause to a single harm.'" Restatement (Second) of Torts § 433A(1) (1965). "The availability of apportionment therefore hinges upon whether the party who seeks it can demonstrate some logical, reasonable or practical basis for assigning discrete portions of the over-all liability to discrete causes." *See Martin v. Owens–Corning Fibreglas Corp.*, 515 Pa. 377, 528 A.2d 947 (1987)).

Q. Was It used daily by pipe coverers?
A. Yes. "L."
Q. "L". Johns–Manville?
A. "L."
Q. Unarco, Unibestos?
A. "L."
Q. Sourthern [Textile]....
A. Medium....
Q. H.K. Porter.... Is this small, medium or large?
A. Large....
Q. G.A.F., and Mr. Maginnis has put down Ruberoid?
A. I would said [sic] "L".
Q. Keene Corporation?
A. "L".
Q. Fibreboard?
A. "S".
Q. Pittsburg [sic] Corning?
A. "L".
N.T. February 14, 1990, pp. 35 & 41–43.

■ Fibreboard's and Pittsburgh's next argument, as we understand it, is that because the *Eckenrod* test, which requires a showing that the plaintiff demonstrate that he inhaled asbestos fibers manufactured by each particular defendant, *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988) *allocatur denied* 520 Pa. 605, 553 A.2d 968, has been met, sufficient evidence has been produced on which to base apportionment.

*Eckenrod* requires only that the plaintiff establish the identity of the product and his exposure to the particular product before liability may be determined. That this was shown in the present case is in no way conclusive of the issue of comparative liability. There was no testimony that one manufacturer's product was present in specific proportions. A designation of "large," "small" or "medium," as was testified to in this case, is significantly different from statements that there was, for example, three or four times more of one product than another present in the workplace. No such testimony was offered. We therefore find no support in *Eckenrod* for the appellant's assertions and no error in the trial court's denial of their motion for a new trial.

■ Fibreboard's and Pittsburgh's next argument assigns error to the trial court's granting of the Gross's petition for delay damages. Their first contention is that, without a clear finding of fault, assessment of delay damages is unconstitutional as a violation of the Due Process Clause. In support of their contention, Fibreboard and Pittsburgh cite *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986).

The issue of the constitutionality of revised Rule 238 was considered by this court in *Craig v. Magee Memorial Rehabilitation Center*, 400 Pa.Super. 126, 582 A.2d 1376 (1990). In that case we stated:

> While the Supreme Court found that the former Rule 238 did create "an uncontestable presumption that all fault lies with a defendant", ... the revised rule "creates no such irreversible presumption; in fact, it specifically

provides that delay damages should not be awarded for that time for which plaintiff is responsible for delay or for which defendant has made a reasonable settlement offer".... The argument of appellant, that defendants are wrongfully deprived of their property by the rule, is further flawed since the defendant may earn interest during the pendency of trial upon those monies ultimately determined to be owed to the plaintiff....

Nor does the fact that delay caused by court congestion may not be subtracted from the period of delay chargeable against a defendant deprive a defendant of his or her property without due process of law "since the defendant has the ability to earn prejudgment interest upon the amount of the verdict, decision or award during the entire period that the plaintiff's claim is being litigated"....

*Craig,* 400 Pa.Superior Ct. at 133, 582 A.2d at 1379–80 (citations omitted). We believe that we have adequately addressed Fibreboard's and Pittsburgh's concerns regarding Rule 238 in *Craig* and accordingly find no merit to the appellant's arguments.[13]

Fibreboard's and Pittsburgh's final challenge to Rule 238 is that delay damages may not be awarded in actions for loss of consortium. Additionally, they argue that delay damages should be awarded only as to past damages, not future damages. A similar argument was presented to this court in *Rogers v. Johnson & Johnson,* 401 Pa.Super. 430, 585 A.2d 1004 (1990) where we quoted our conclusion from *Novelli v. Johns–Manville,* 395 Pa.Super. 144, 151–152, 576 A.2d 1085, 1089 (1990) *allocatur denied* 527 Pa. 621, 592 A.2d 42:

In light of the derivative nature of the action for loss of consortium, we are satisfied that loss of consortium is part of the total compensable damages arising from the

13. The Grosses raise the issue of appellants' noncompliance with Pa.R.App.P. 521, requiring that notice of a constitutional challenge of any statute be provided to the Attorney General, and Pa.R.App.P. 522, requiring the filing of notice of a challenge to the constitutionality of a general rule with the Court Administrator. The record does not reveal that such notice was provided to either the Attorney General or the Court Administrator.

decedent's bodily injuries, and we hold that loss of consortium is part of "what was owed" under *Craig* [*v. Magee Memorial Rehab. Ctr.*, 512 Pa. 60, 515 A.2d 1350 (1986) ].

We find further support for this conclusion by noting that not to allow delay damages for loss of consortium awards would undermine the purpose of Rule 238. As noted above, Rule 238 is designed to encourage responsible approaches to these cases and prevent unreasonable refusals to pay what is owed for tortious injury....

In summary, we hold that, because loss of consortium is part of the total compensable damages related to the decedent's injuries, Rule 238 delay damages may be assessed on awards for loss of consortium....

*Rogers*, 401 Pa.Superior Ct. at 439, 585 A.2d at 1008 (citations omitted). It was therefore proper for the trial court's assessment of delay damages to include the loss of consortium verdict.

 Fibreboard and Pittsburgh next argue that it is improper to assess delay damages against an award of damages for future pain and suffering. Initially, we note that Rule 238 makes no distinction between present damages and future damages and no exclusion for future damages is provided under section (b) of the Rule which allows for exclusion for the period of time in which there has been a settlement offer. We also note that appellants only state that "[a] large portion of the verdict in this case clearly represents compensation for Mr. Gross's future pain and suffering." (Brief of appellants Fibreboard and Pittsburgh, p. 32). No support is offered for this statement nor has any assessment been made as to what portion of the damages award represents future pain and suffering. We do not find appellants' argument to be persuasive.[14] The trial correctly awarded delay damages to the entire verdict absent any assertions that the plaintiff caused delay of the trial. *See* Pa.R.Civ.P. 238(b)(2).

**14.** In *Dietrich v. J.I. Case Co.*, 390 Pa.Super. 475, 568 A.2d 1272 (1990), it was argued that Rule 238 imposes delay damages for future losses and injuries not yet payable, and violates the excessive fines clause of the United States Constitution. *Id.* 568 A.2d at 1278. We concluded that Rule 238 was not patently unconstitutional.

506

The trial court's denial of delay damages as to the stipulating defendants is reversed and remanded for assessment of such damages in accordance with this opinion. The trial court's orders and opinions of November 5, 1990, and December 7, 1990, are affirmed in all other respects. Jurisdiction relinquished.